J. A. JOHNSON V. THE STATE.

No. 20888. Delivered April 3, 1940.
Rehearing Denied October 23, 1940.

146

The opinion states the case.

*Griffin & Moorehead,* of Plainview, *Mark Cowsert,* of Dimmitt, and *E. T. Miller,* of Amarillo, for appellant.

*Herbert C. Martin,* District Attorney, of Littlefield, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appellant was convicted of murder by the District Court of Lamb County, to which the case had been transferred on a change of venue, and was given a sentence of nine years in the penitentiary.

At a former trial in Castro County he was given three years, and upon appeal to this court the case was reversed. See Johnson v. State, 135 Texas Crim. Rep., 248; 117 S. W. (2d) 1100. A statement of the case as given in that opinion is herein referred to for a better understanding of the facts before us.

Appellant had nine bills of exception dealing principally with one question in which objection is raised to the action of the court in permitting a witness to testify to a conversation had in his presence between the appellant and E. F. Lee, which conversation reflected an agreement for Lee to assist the appellant by securing for him evidence for his defense. It was indicated that this evidence was to be manufactured to suit the demands of the trial. Lee had testified on a former trial of the case but not at the present one; and while the prosecution had asked Johnson concerning his conversation with Lee, they had not laid the proper predicate to prove that conversation for the purpose of impeaching the appellant as a witness. If that be the purpose and intention of the prosecution, error is apparent and the case must be reversed. However, it appears to us that appellant's attorneys take the wrong view as to the purpose of the testimony and its admissibility. If it is for the purpose of showing an effort on the part of the appellant, directly or indirectly, to fabricate evidence, it will be admissible as a circumstance indicating that his cause is an unrighteous one. Wharton's Criminal Evidence, (11th Ed.), Vol. 1, p. 410, sec. 306.

In Faulkner v. State, 283 S. W. 825, this question was before the court where it appeared that the defendant was seeking to fabricate the defense of alibi. Judge Hawkins, writing on the motion for rehearing, said: "As we understand the record, the question of impeachment does not enter into the matter at all. It is always admissible to prove as a circumstance of guilt that an accused has fabricated or attempted to fabricate testimony."

It is true, in the instant case, that the prosecution asked some questions of the appellant regarding his conversation with Lee. They might have proceeded further into the details and have laid a predicate for impeachment purposes, depending, of course, upon circumstances not clearly before us. This appears

to have confused counsels' minds. The State did not do that, and the failure to do so will in no sense restrict the right under the well-established rule to show, if they can, the effort upon the part of the appellant to fabricate testimony or to destroy or suppress evidence.

In Brown v. State, 51 S. W. (2d) 616, Judge Lattimore expressed the opinion that testimony is admissible to show the accused had attempted to fabricate or procure false evidence for the purpose of showing his consciousness of guilt, citing the Faulkner case, supra.

The same question was considered in Carpenter v. State, 61 S. W. (2d) 849. The State proved by two witnesses that the defendant on trial had tried to get them to testify that he was not at the place when the offense was committed. This may be proof of a separate and distinct offense, but the court held that it showed an attempt on the part of the appellant to fabricate a defense and was, therefore, admissible on the general issue of guilt. We view the testimony of Coy Scitern in this case as being offered for the specific purpose of showing the effort upon the part of the appellant to fabricate a defense. If so, this evidence is admissible for the general purpose of showing the appellant's consciousness of guilt. It is similar to flight, proof of which is always admissible for the purpose of showing guilt. The question has been so many times before this court that it may be considered a well-settled rule.

Complaint is made also of the court's charge in presenting his plea of self-defense, and raises the question as to whether or not the jury was properly instructed to view the threats and apparent danger from the defendant's standpoint. We have considered the charge in question and find that the instruction was properly given. The complaint that it was not expressed in the first part of the paragraph is without merit. It is nevertheless plain, clear and forceful.

No error appearing, the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant has filed a motion, ably presented, for a rehearing in which it is urged that this court erred in the original opinion in holding admissible the testimony of Coy Scitern detailing a conversation between appellant and E. F. Lee. Scitern said that appellant requested him to testify that the deceased came to

the field where he, Scitern, was plowing and made threats to kill appellant and that such threats were communicated to appellant in the presence of Mrs. Birdwell. The witness declined to do this. He then told of the conversation between appellant and Lee in his presence, as set out in our original opinion.

When all of the evidence is construed together it is to the effect that Lee was ready to furnish any testimony which was wanted and that appellant, at least tacitly, accepted the offer. We adhere to the view that the testimony was admissible as original evidence and could be introduced without a predicate being laid therefor. This disposes of bills of exception Nos. 1-A to 1-H.

In bill of exceptions No. 1-I complaint is made of the evidence relating to a conversation between appellant and E. F. Lee relative to the renting of a farm by Lee after the homicide. The court promptly sustained appellant's objection. We are not in accord with the complaint that this was so highly prejudicial that the court's action could not remove the harm done. A question may be on immaterial and irrelevant matters and yet be harmless. We have examined the authorities cited by appellant on this subject but do not believe that they support the conclusion contended for. Appellant said on cross-examination: "I don't know where E. F. Lee is. He was quarantined for typhoid fever. I haven't investigated where my witness Lee is nor what shape he is in."

Appellant further complains that this court erred in not sustaining his contention that the trial court should have instructed the jury relative to Art. 1257a of the Penal Code, which reads as follows: "In all prosecutions for felonious homicide the State or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed."

This article of the statute is but a rule of evidence. Art. 1257b and 1257c of the Penal Code relate to the instructions which the court should give to the jury on the trial of one accused of murder. We think the trial court's action was proper.

Further complaint is made to paragraph eight of the court's charge relating to the law of threats. We are unable to agree that there is error in this charge as it appears to us to be in the language of Art 1258, P. C.

It is presented also that the court committed error in failing to instruct the jury that if it reasonably appeared to the defendant from the acts, or from the acts coupled with the words of the deceased, viewed from the defendant's standpoint at the time, that the deceased was about to make or was in the act of making an unlawful attack upon the defendant, or if they had a reasonable doubt thereof, they should return a verdict of not guilty. It occurs to us that paragraph twelve of the court's charge specifically instructed the jury on the matters complained of. Contention in this respect is overruled.

Appellant complains because the trial court refused to instruct the jury, in connection with self-defense, that the relative size and strength of the deceased and appellant were to be taken into consideration.

According to appellant's testimony, he was seated at his desk in the building in which the post office was located, and saw deceased approaching, and "The next thing I observed was that he grabbed the screen door with his left hand and stepped up in the door— when he grabbed the screen door he threw the screen door back and he says: 'I have got you now.' He were standing in the door. I said 'Stop.' And he did stop after I shot. He were a most desperate looking man out of his eyes and face when he came in the door. He were just fixing, looked to me like, to spring right on me. He were practically four feet and fixing to spring when I shot."

There was no testimony that the deceased was armed or was making any demonstration with a weapon of any character. In addition, there was evidence showing threats of deceased towards appellant, and which had been communicated to him prior to the shooting. There was evidence that deceased was a strong, robust man, greatly superior in strength to the appellant who, because of a recent accident, was in a weakened physical condition.

A charge embodying the law of self defense from threats was given separate and distinct from the following charge on self-defense, which was given, viz: "Now, if you believe from the evidence in this case that the deceased unlawfully attacked the person of the defendant, or if it reasonably appeared to the defendant from the acts, or from the acts coupled with the words, if any, of the deceased, viewed from defendant's standpoint at the time, that the deceased was about to make, or was in the act of making, an unlawful attack upon the defendant, or if you have a reasonable doubt as to whether or not the deceased did make such an attack, or was about to make such an

attack, or as to whether or not it reasonably appeared to the defendant at the time that the deceased was about to make such attack, then you are instructed to find the defendant not guilty."

. This charge was more favorable to appellant than is required by law, in that it gave appellant the complete and perfect right of self-defense against any unlawful attack, actual or apparent, that the deceased was making or was about to make.

Our Penal Code recognizes two classes of self-defense: The first class, under Art. 1222, P. C., comprises all cases in which the right is preserved against a deadly attack or one producing a reasonable expectation, or fear of death or serious bodily injury, while the second class (Art. 1224, P. C.) comprises those cases in which the purpose or intent indicated by the unlawful and violent attack is other than above mentioned, and then all other means must be resorted to for the prevention of the injury or killing.

As here presented, no requirment was made that the attack on appellant be of a deadly character, nor was he required to resort to other means before killing the deceased, but was authorized to act if it reasonably appeared to appellant that the deceased was making, or was about to make, an unlawful attack on him.

The relative strength and size of the parties could not enter into the matter in determining whether the attack or threatened attack was of a deadly character; and appellant having been accorded the right to defend himself against any unlawful attack, regardless of its character, rendered unnecessary any instruction relative to the character of the attack.

Under the facts of this case and the above quoted paragraph of the charge as given, no necessity existed to charge the jury as requested by appellant. The appellant had already, by means of the above quoted charge, been given the right to defend himself, even to the point of taking the life of his assailant, if he believed that the deceased was making any attack upon appellant. Even an assault,—which could have consisted of but a threatening gesture (Art. 1138, P. C.) coupled with an ability, evidencing an immediate intention to commit a battery,—under this charge could have been used by the jury as a basis of an acquittal. This we think was a more liberal charge than he was entitled to under the law and the facts herein shown.

We have carefully considered all matters raised in the motion for a rehearing and same are overruled.

The motion is overruled.