## J. A. JOHNSON v. THE STATE.

No. 19636.  Delivered May 11, 1938.
Rehearing denied June 22, 1938.

The opinion states the case.

*E. T. Miller,* of Amarillo, and *Mark Cowsert,* of Dimmitt, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—Appellant was charged with murder, and upon a conviction therefor was sentenced to the penitentiary for a term of three years.

The testimony shows that there had been some previous disagreement between C. W. Price, the deceased, and the appellant and on July 30, 1936, in the town of Flagg in Castro County, the deceased lost his life at the hands of appellant by means of two pistol shots. It appears that there were witnesses who testified to threats on the part of the deceased, which were communicated to the appellant prior to the homicide. The appellant made the following statement, as to the facts at the actual scene of the shooting, before the county attorney, as follows: "Today Price stopped his car across the street from my office; it was

about a quarter till 5:00 o'clock this afternoon. I saw Price get out of his car and I told old Mr. Adams who was there that I guess Price wanted his mail and to get up and give it to him as I did not want to see Price; but Price came to my door instead. He had his left hand on the screen and his right about here. (Indicating about even with his belt on the right side of his stomach.) He opened the door with his left hand and said 'You God damn son of a bitch, I got you now'; I told him to stop; but he came on; and I picked my gun up off my desk and fired two shots at him as fast as I could fire two shots with my single action pistol. I told Uncle Jim Adams to watch and not let anybody bother the body or anything until the sheriff got there. I came on to town and surrendered to the sheriff."

Appellant also testified as follows:

"I looked up when I saw the car [Price's] stop and I certainly did continue to look at him. He was coming straight to the post office and he got out of his car and started toward the post office. He was practically in the center of the street when he went out of sight of me. I turned around. I quit writing. I turned around to Mr. Adams. I said, 'There is Mr. Price after his mail. Go get it. I don't want to meet him.' I continued to set there at my desk just like I was. I stated that Mr. Price went out of my sight from that window.

"At that time my pistol was laying there on my desk. The next time I seen Mr. Price was when he rushed by the window and after he rushed by the window I next noticed that he grabbed the door with his left hand. He grabbed the screen door with his left hand and stepped up in my door and he made, as near as I can say, this remark: 'I have got you now,' and I said, 'Stop.' When I said stop I shot twice as quick as I could. When I shot Charley Price fell, that is, as near as I can tell. When he was coming in that door he looked like a wild man. When he was in that door and made that statement he was in my judgment practically four feet, not over four feet from where I was sitting."

In his charge on self-defense the court set forth the following: "11. Now, if you believe from the evidence in this case that the deceased unlawfully attacked the person of the defendant, or if it reasonably appeared to the defendant, viewed from his standpoint at the time, that the deceased was about to make, or was in the act of making, an unlawful attack upon him, (the defendant), or if you have a reasonable doubt as to whether or not the deceased did make such an attack, or was about to make

such an attack, or as to whether or not it reasonably appeared to the defendant at the time that the deceased was about to make such attack, then you are instructed to find the defendant not guilty."

The appellant objected to such charge because the same was too restricted in that it does not say "from words spoken or acts done," particularly in the court's failure to use the language "words spoken." Appellant's attorneys also in their requested special charge No. 1 embodied a charge attempting to remedy the pointed out defect in the above set forth objection. That such a charge should have been given is plain from the hereinafter quoted authorities.

In Article 1222, P. C., which is the statute that prescribes wherein homicide is justifiable, we find Section 1 as follows:

"It must reasonably appear by the acts or by words coupled with the acts of the person killed that it was the purpose and intent of such person to commit one of the offenses above named."

In the case of Perkins v. State, 8 S. W. (2d) 122, a charge that failed to couple the acts and the words of the deceased person was held to be error, the Court saying (page 123): "The charge should refer to both the acts and the words of the deceased where the facts show that the words as well as the acts may have produced in the mind of the accused fear of death or serious bodily injury at the hands of the deceased," citing Briggs v. State, 95 Texas Crim. Rep. 629, 255 S. W. 410; Dugan v. State, 86 Texas Crim. Rep. 130, 216 S. W. 161.

From the case of Briggs v. State, supra, we quote the following (page 412): "It is also contended that the charge only allowed the jury to determine that he (appellant) was in danger at the hands of the deceased from the acts and conduct of the deceased in making an attack, and did not authorize the jury to consider also in this connection the word or words, if any, used by deceased accompanying some act. We believe this also to be a just criticism of the charge. * * * Many cases might be cited in which we have held that, when demanded by the evidence, a charge is too restrictive of the right of self-defense which makes such right depend wholly on the acts of the injured party, and not his acts coupled with his words."

In Dugan v. State, 86 Texas Crim. Rep. 130, it was said: "In a proper case—that is, one in which the evidence shows that the language of the deceased may have given color to his

acts—the charge should be so framed as to give the accused the benefit of the language as well as the acts of the deceased, and in such case its limitation to the acts alone has been uniformly held harmful error," citing Andrus v. State, 73 Texas Crim Rep. 329, 165 S. W. 190; Sanchez v. State, 67 Texas Crim. Rep. 453, 149 S. W. 124.

It is apparent from a study of the facts in this case that the jury might have inferred that the deceased approached the appellant without having made any unlawful demonstration of any kind. In fact, it was contended by the State that appellant was sitting inside his office at his desk, and that a screen door outside of the office was closed at the time the deceased was killed, or that the deceased was standing in such screen door some distance away from the desk at which appellant was seated. Under the circumstances it seems to us that the facts called for a charge on self-defense not limited to the acts of deceased alone, but that the same should have been coupled with any words that he might have spoken at the time of the firing of the shots that took his life.

Relative to the matter complained of in bill of exceptions No. 3, wherein the State proved that there was no pistol found near the deceased's body, such was not error. Mr. BRANCH says in his Penal Code, Section 1931: "The State is entitled to prove that the deceased was not armed and made no movement to draw a weapon, or made no attack on the defendant in any way at the time of the homicide," citing many cases.

There are many complained of errors in the remaining portion of the record which will doubtless not occur upon a further trial of this cause. However, we are unable to see the materiality of the testimony of E. F. Lee relative to a criminal charge against him twenty-five years prior to the time he testified. We have often held that such charge was too remote to affect the credibility of a witness. We see no reason for discussing matters set forth in appellant's other bills of exception.

On account of the court's failure to give a proper charge on self-defense, this judgment will be reversed and the cause remanded.

### ON STATE'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—After a careful re-examination of the record in the light of the State's motion for rehearing we are

constrained to adhere to the conclusion expressed in the original opinion.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.