## L. A. BRATTON V. STATE

No. 27,534. April 27, 1955
State's Motion for Rehearing Denied June 8, 1955

*R. G. Allen,* Houston, for appellant.

*Dan Walton,* District Attorney, *Eugene Brady, Thomas D. White,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is murder; the punishment, five years.

The homicide took place near midnight in the City Market in Houston. The deceased was a trucker; the appellant was the acting Market Master.

In view of our disposition of this case, a recitation of the facts will not be necessary other than to outline appellant's defense as shown by his testimony. He stated that, according to the rules of the market, truckers were not permitted to sleep in their trucks except in Section A. The reason for this regulation was that Section A was next to the market office, and it was easy to keep watch on them. He stated there had been much pilfering in the market and that when he arrived on the night in question he observed two men enter the market and walk toward a truck parked in the corner furthest from the office, that he followed them and instructed them to move their truck to Section A. We quote from his testimony:

"Barlanga come around the truck with some bedding in his arms, and I told Banito, I said, what's that you have, your bedding, why not go over there and bed down on one of those tables. I couldn't let them stay back over there; they would have to sleep there or get off of the Market. Barlanga said, who are you, and I said, I am in charge of the Market, he said, why hell, you aint nobody. I said, well, just the same I can't let you stay over here and sleep. . . . Barlanga stepped up on the table and throwed his bedding down, and I caught him by the arm and I pulled him off the table. He turned around and he kicked me, he kicked me on my left leg. I stepped back away from him and I pulled out the badge out of my hip pocket and I showed him my badge, and told him that I was the law here on this Market, and he would either have to go over there and sleep, or he would have to get off the Market. Then, when I showed him my badge, Barlanga reached his hand into his right-hand pocket and he pulled out a little knife. . . ."

He testified further:

"We grappled around a little bit and wrestled around until we got out to the street where both of us fell. I only fell on one knee and I got up and stepped away from Benito. While we was wrestling out there to the street, Benito said, 'I'll whip your— I'll whip you,' anyhow, when we fell, and I got up, I stepped back. Barlanga was running out there and I knew that he had his pocket-knife, but when I saw him he had put his knife up or done something with the pocket-knife; he was wrapping a belt around his right hand, leaving part of it extended with the belt-buckle out. Benito (the deceased) jumped up off of the

ground; he run his hand into his right-hand pocket, flipped the knife open like that . . . . I saw the knife distinctly, good. He pulled that knife out and flipped it like that and he said, 'I'll kill you' and he run at me. At the same time Barlanga hit me with the belt on this side of my face; it made an abrasion on my face. And when he run at me with that knife, I run.

\* \* \* \*

"I ran towards the office to go over there and get my pistol and come back over there and arrest those men. I knew that they had to be arrested. . . ."

It was after his return from the office that he shot the deceased.

The court charged on the law of self-defense, but the charge as given did not encompass the threats, statements and exhibition of a knife by the deceased.

The appellant requested three charges which, though not entirely proper, were sufficient to call the court's attention to the undue restriction on the appellant's right of self-defense as submitted in the court's main charge and call for a reversal of this conviction. Henry v. State, 136 Texas Cr. Rep. 22, 123 S.W. 2d 347; Johnson v. State, 135 Texas Cr. Rep. 248, 117 S.W. 2d 1100; Perkins v. State, 110 Texas Cr. Rep. 262, 8 S.W. 2d 122; Briggs v. State, 95 Texas Cr. Rep. 629, 255 S.W. 410; Dugan v. State, 86 Texas Cr. Rep. 130, 216 S.W. 161.

It would also have been appropriate for the trial court to have instructed the jury on appellant's right and duty to enforce reasonable regulations of the market for the protection of property and merchandise located therein, to use reasonable means and force to require persons and patrons to observe the regulations or leave the premises, and in the event he was resisted and attacked his right of self-defense would not be impaired. Grohoske v. State, 124 Texas Cr. Rep. 328, 61 S.W. 2d 847; Vann v. State, 43 Texas Cr. Rep. 244, 64 S.W. 243.

The judgment is reversed and the cause remanded.

### ON STATE'S MOTION FOR REHEARING

DAVIDSON, Judge.

The state's challenge of the correctness of our original con-

clusion is founded upon the general proposition that the acts and conduct of the appellant toward the deceased were such as to show an unauthorized and illegal attempt by appellant to arrest him, and that such action deprived the appellant of his perfect right of self-defense.

We are not in disagreement with the state as to the principle of law involved, but our disposition is based upon the proposition that the facts relied upon to show a forfeiture of appellant's right of self-defense should have been submitted to the jury, under appropriate instructions. In other words, we are unable to say that the trial court was authorized to conclude that the facts showed a forfeiture, as a matter of law.

We remain convinced that a correct conclusion was reached by us originally.

The state's motion for rehearing is overruled.