

Matthew Thomas CLARKE, Appellant,

v.

STATE of Texas, State.

No. 0620–90.

Court of Criminal Appeals of Texas,
En Banc.

April 17, 1991.

Jimmy Morris, Corsicana, for appellant.

Patrick C. Batchelor, Dist. Atty. and Alan Bristol and Donald V. Phillips, Asst. Dist. Attys., Corsicana, Robert Huttash, State's Atty., Austin, for the State.

Joe Coy ELLIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 631–90.

Court of Criminal Appeals of Texas,
En Banc.

May 1, 1991.

Rehearing Overruled July 3, 1991.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

A jury convicted appellant of murder and assessed punishment at sixty years imprisonment. The Court of Appeals affirmed. *Ellis v. State*, No. 10–89–001–CR (Tex. App.—Waco 1990). We granted review to determine whether the trial court properly refused to charge the jury regarding threats made by the deceased. We will reverse and remand.

The following facts are taken from the Court of Appeals' opinion:

[O]n June 20, 1987, Ellis caught Barney Stephens burglarizing the house in which he was living at the time. A struggle ensued, during which Ellis suffered knife wounds to his spine, kidney, liver, and left lung, and a shotgun wound to the rear of his right knee. But for the intervention of the couple who own the house, Ellis would likely have been killed by Stephens. As it was, Ellis was confined to the hospital until October, where he underwent at least ten surgeries.

Stephens, who had less serious wounds from his encounter with Ellis, emerged from the hospital soon thereafter and, according to Ellis, began threatening Ellis and his family by phone calls and with drive-bys. Apparently Stephens was sent to prison at some point after the incident for breaking parole.

Stephens emerged from prison on or about May 14, 1988. Two days later Ellis loaded his shotgun and drove his car to a place near Stephens's farmhouse, but out of his sight. Ellis then walked toward the house hoping to surprise Stephens, but Stephens spotted Ellis while he was still about seventy yards away.

Ellis relates that when Stephens saw him approaching, Stephens grabbed at his own chest and charged, yelling, "I'm not through with you yet, M.F." Ellis claims that in self-defense, he fired his shotgun at Stephens three times, once from about fifty yards, another from about sixteen yards, and a third time from close range while, according to Stephens's mother, Stephens begged him not to shoot.

*Ellis*, supra, slip op. at 1–2.

At trial, appellant requested the following charge:

You are further instructed that where a defendant accused of murder seeks to justify himself on the grounds of threats against his own life, he is permitted to introduce evidence of the threats made, but the same shall not be regarded as affording justification for the offense unless it be shown at the time of the homicide the person killed by some act then done manifested an intention to execute the threats so made, if any.

The trial court gave the jury the following charge:

Therefore, even if you believe from the evidence ... that the Defendant intentionally and knowingly caused the death of an individual, Barney Lee Stephens, ... but you further believe, ... at the time and place in question, the Defendant reasonably believed that Barney

Lee Stephens was using or attempting to use unlawful force against him....

However, if you believe from the evidence ... at the time and place in question, the Defendant did not reasonably believe that Barney Lee Stephens was using or attempting to use unlawful force against him....

The charge defined "reasonable belief" as "belief that would be held by an ordinary and prudent person in the same circumstances as the Defendant."

On appeal, appellant contended that the trial court erred in failing to charge the jury on the threats made by the victim to appellant. The Court of Appeals stated the following in overruling appellant's point of error:

The "threats" to which Ellis refers are not substantiated by the testimony adduced at trial. The record reveals that Ellis's family and Stephens's family were neighbors. Ellis's mother, with whom Ellis was living, testified Stephens was seen by the Ellises' mailbox on one occasion and that he called their house one time, both in September 1987. Mrs. Ellis testified to only one "threat"—the one phone call, almost a year before the murder. Stephens's parole officer testified that Mrs. Ellis reported Stephens "hanging out at her mailbox," but denied that she mentioned any threats. Finally, although Mrs. Ellis testified she spoke to two men in the sheriff's department, one of the men denied ever having heard about any threats having been made by Stephens against any of the Ellis family from any member of that family. Again, based upon the evidence revealed in the record, we hold the trial court properly denied Ellis's requested instruction as to threats made by Stephens which could have made Ellis believe he was in any real or apparent danger from Stephens at the time of his attack upon Stephens.

In his petition, appellant contends that the Court of Appeals improperly overlooked the following evidence in holding that the record did not support a charge on threats:

1. Ellis testified that he received threatening telephone calls day and night from Stephens and that Stephens threatened to kill appellant's three year old boy and appellant's mother and father. Ellis testified that Stephens threatened to kill him and his family the day before appellant shot Stephens.

2. On the day of the shooting, when Stephens saw appellant, he grabbed at his chest and said "I'm not through with you yet, M.F.," and made a charge toward appellant.

3. When Stephens stabbed appellant in the spine, kidney, liver, and lung, and shot appellant behind the right knee, he said "I'm going to kill everybody in this damn house."

4. When appellant shot Stephens, he stated that he acted because of fear.

In several cases this Court has held that a defendant is entitled to a charge regarding verbal threats made by the victim toward the defendant. In *Bazan v. State*, 111 Tex.Crim. 320, 12 S.W.2d 788 (App. 1929), the defendant was charged with murder and presented evidence that prior to and on the night of the murder, the victim had threatened to kill him. This Court held that the self defense charge given was unduly restrictive because it limited the jury's consideration to the victim's acts and the evidence showed the use of words which may have, in connection with the acts, produced a fear of death in the defendant's mind.

In *Barkley v. State*, 152 Tex.Crim. 376, 214 S.W.2d 287 (App.1948), the defendant was charged with murder. Five days before the defendant killed the victim, the victim picked up a hammer and asked what the defendant had told their boss about the victim. When the defendant said he had not said anything, the victim said, "You are a Goddamned liar. I am going to find out tomorrow and if you did, I'll bury this hammer in your Goddamned head." Three days before the killing, the victim said, "Run you s— of a b——, I will kill you yet." The victim also threatened the defendant on the day of the killing. The court instructed the jury on the law of self-

defense and included a charge identical to that requested by appellant in the instant case. This Court held that the charge was proper given the evidence of threats.

In *Bratton v. State*, 161 Tex.Crim. 623, 279 S.W.2d 865 (Tex.Cr.App.1955), the defendant was charged with murder. The evidence showed that the victim had verbally threatened the defendant immediately before the killing. This Court held that the trial court erred by submitting a self defense charge which did not encompass the victim's threats and statements.

■ These cases indicate that when evidence is presented that the victim verbally threatened the defendant and that the defendant may have acted in self-defense, a charge on self-defense should not be restricted to only the acts of the victim; verbal threats should be included as well. The Court of Appeals' opinion does not clearly conflict with this holding.

■ The issue appellant raises concerns the Court of Appeals' view of the facts. We have examined the record and find that the evidence discussed in appellant's petition concerning the victim's verbal threats to harm appellant and his family made prior or to the killing and the threat made on the day of the killing was presented to the jury. Thus, the Court of Appeals erred in holding that threats were not substantiated in the record.

The judgment of the Court of Appeals is reversed and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

McCORMICK, P.J., dissents.

MILLER, Judge, concurring.

I write to reiterate that the 1974 Penal Code sections relating to homicide have not been construed as an exclusive codification of the law of homicide as it relates to self-defense, right to arm one's self, etc. *Young v. State*, 530 S.W.2d 120 (Tex.Cr. App.1975).

The charge requested in this case was sanctioned by pre–1974 cases as cited by the majority opinion. Believing that this

charge is contained within the ambit of those pre–1974 common law jury instructions that also survived the "new" penal code, as noted in *Young*, supra, I join the majority opinion.

OVERSTREET, MALONEY and BENAVIDES, JJ., join this opinion.