Joe Miguel RAMIREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 08-91-00289-CR.

Court of Appeals of Texas,
El Paso.

March 30, 1994.

David Guinn, Crane, Frank B. Suhr, New Braunfels, for appellant.

Albert G. Valadez, Dist. Atty., Fort Stockton, for state.

Before KOEHLER, LARSEN and McCOLLUM, JJ.

## OPINION

KOEHLER, Justice.

Joe Miguel Ramirez appeals from a conviction for the offense of murder. Upon a finding of guilt, the jury found the enhancement paragraph true and assessed punishment at imprisonment for a term of 80 years and a fine of $5,000. We reverse.

In his first point of error, Appellant contends that the trial court erred by failing to include in the court's charge an instruction on the lesser-included offense of voluntary manslaughter. See TEX.PENAL CODE ANN. § 19.04 (Vernon 1989). In order to determine whether a charge on a lesser-included offense is required, we must apply a two-prong test. *Dowden v. State,* 758 S.W.2d 264, 268 (Tex.Crim.App.1988); *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim.App. 1981) (Opinion on Rehearing). First, the lesser-included offense must be included within the proof necessary to establish the

offense charged. *Dowden,* 758 S.W.2d at 268; *Royster,* 622 S.W.2d at 446. Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Id.* The necessity for a charge on a lesser-included offense must be determined on a case by case basis, and in determining this question *all* of the evidence at the trial, whether produced by the State or the defendant, must be considered. *Dowden,* 758 S.W.2d at 269. If evidence from any source raises the issue and a jury charge on the issue is properly requested, the issue must be submitted to the jury. *Id.*

██ Voluntary manslaughter cannot be considered a lesser-included offense of mur-. der unless there is some evidence of sudden passion in the case. *Acosta v. State,* 742 S.W.2d 287, 288 (Tex.Crim.App.1986); *Bradley v. State,* 688 S.W.2d 847, 851 (Tex.Crim.App.1985). The fact that the evidence raises the issue of self-defense will not *entitle* an accused to a charge on voluntary manslaughter unless there is evidence that the killing occurred under the immediate influence of sudden passion arising from an adequate cause. *Acosta,* 742 S.W.2d at 288; *Daniels v. State,* 645 S.W.2d 459, 460 (Tex.Crim.App. 1983); *Gonzales v. State,* 717 S.W.2d 355, 357 (Tex.Crim.App.1986). Not all testimony of anger or fear entitles a defendant to a voluntary manslaughter charge. *Gonzales,* 717 S.W.2d at 357; *Nance v. State,* 807 S.W.2d 855, 860 (Tex.App.—Corpus Christi 1991, pet. ref'd). For a claim of fear or anger to rise to the level of sudden passion, the defendant's mind must be rendered incapable of cool reflection. *See Gonzales,* 717 S.W.2d at 357.

██ In support of his argument that the evidence raised the issue of sudden passion, Appellant points to his own testimony and that of a witness named Charleshina Schaeffer. Appellant testified that on the evening of the shooting, he drove to Luis Hernandez' house after work, and he visited with Luis and Benny Piezd for about an hour. Appellant agreed to give Benny a ride to some location but along the way, they decided to stop at the Comanche Motel to visit Geronimo Flores who lived in Room 21. They drank beer and visited with Geronimo outside of his room.

Sometime during the evening, Jesus Alfaro and Israel Vasquez, the deceased, arrived in Alfaro's car and went into Room 19 with two bottles of whiskey. Benny went into Room 19, and after a little while, Appellant heard loud voices. Appellant went to get Benny so that they could leave. He looked in the open door and saw Benny, Alfaro, and Vasquez. Vasquez looked upset and when he saw Appellant, said that he wanted to fight. Appellant did not know why Vasquez wanted to fight him. Appellant left and walked back over to where Geronimo was standing. A few minutes later, Benny walked over to them. While they were talking, Appellant looked behind him and saw that Vasquez was standing near him holding a machete. Vasquez asked Appellant if he was ready and said, "I'm going to kill you." Appellant became scared and got in his car to leave. Vasquez tried to get in the passenger side of the car, but Appellant was able to drive away.

Appellant said that he "wasn't thinking very good" and he was scared and panicked. After a few minutes, he decided to return to the motel to get Benny, but could not find him. Appellant got out of his car to look for Benny, but was approached by Vasquez again. When he saw Vasquez rapidly walking towards him with the same knife, Appellant pulled a .22 caliber rifle out of the back seat of his car. He told Vasquez to stop and injected a shell into the rifle. Vasquez charged him with the knife and Appellant shot him. Appellant said that he had to shoot Vasquez.

Mrs. Schaeffer testified that she and her husband lived in Room 18. On the evening of the shooting, they heard men arguing over whiskey in Room 19. She went to the room and saw Appellant standing in the doorway and Vasquez standing at the foot of the bed. Benny and Alfaro were also in the room. Vasquez was cleaning a steak knife that he had used at a barbecue earlier in the day. After the argument, she said that Appellant flew out of the room in a rage and got into his car and left with Benny. A short while later, she saw Appellant back at the motel.

Vasquez walked towards Appellant, held up his hands and asked him what he wanted. Appellant got out of the car with a rifle and, after first pointing the gun at Mr. Schaeffer, shot Vasquez.

The only evidence in the record which sheds light on what caused Appellant to become angry with the deceased is found in the testimony of Jesus Alfaro. He testified that Appellant entered Room 19 and Vasquez offered him a drink. When Appellant said that he did not want anything, Vasquez told him to leave. Appellant told Vasquez that he would leave, but would be back. Neither Appellant nor Mrs. Schaeffer indicated how much time had elapsed from the time Appellant left until he returned. However, another witness stated that he thought Appellant was gone five or six minutes.

■ Appellant relies on evidence of two emotional states, namely, anger and fear, to raise sudden passion. We will address them individually. The record does not reflect that Appellant's alleged rage arose from an adequate cause. *See* Tex.Penal Code Ann. § 19.04(c) (Vernon 1989). The only evidence in that respect showed that Appellant became angry merely because Vasquez told him to leave the room if he did not want a drink. An instruction on voluntary manslaughter is properly refused where there is no evidence of adequate cause. *Marras v. State,* 741 S.W.2d 395, 405 (Tex.Crim.App.1987). After viewing the evidence of the alleged provocation in the case objectively, we conclude there is no evidence of adequate cause to warrant a charge on voluntary manslaughter. *See Marras,* 741 S.W.2d at 406; *Lopez v. State,* 716 S.W.2d 127, 129 (Tex.App.—El Paso 1986, pet. ref'd). Further, Mrs. Schaeffer's testimony did not indicate that Appellant was in a rage or angry *immediately* prior to or at the time of the shooting. Although she indicated that Appellant was in a rage when he first left the motel, there is no evidence in the record that Appellant was still in a rage or otherwise incapable of cool reflection when he returned several minutes later and shot Vasquez. In the absence of evidence that Appellant acted in sudden passion, the issue of voluntary manslaughter was

not raised. *Marras,* 741 S.W.2d at 405; *Ojeda v. State,* 712 S.W.2d 742, 744 (Tex.Crim. App.1986).

■ If a defendant acts out of terror arising from an adequate cause, he is entitled to a charge on voluntary manslaughter. However, Appellant's claim that he was afraid of the deceased was insufficient to raise the issue that he was acting under the immediate influence of sudden passion arising from an adequate cause. *See Gonzales,* 717 S.W.2d at 357–58. Appellant relies on *Mendivil v. State,* 812 S.W.2d 629 (Tex.App.—El Paso 1991, no pet.) in support of his contention that the evidence raised the issue of sudden passion. We find *Mendivil* distinguishable. In that case, there was specific evidence in the record of the defendant's mental state at the time of the killing. He described it as "shock, insane, berserk" after the deceased cut his hand with a knife. *Mendivil,* 812 S.W.2d at 630–31. Although Appellant testified that he was panicked and not thinking well when he first drove away from the motel, there is no evidence that his panic and confusion continued after he made the decision to return to pick up Benny. Likewise, there is no evidence that Appellant's fear at the time of the shooting rose to a level of terror sufficient to render him incapable of cool reflection. *Lopez,* 716 S.W.2d at 129. Appellant argues that we may infer from the events testified to by him that he was terrorized by the words and conduct of Vasquez. The Court of Criminal Appeals has refused a similar invitation to imply material evidence into the record, and we will likewise decline to do so. *See Gonzales,* 717 S.W.2d at 357.

In the absence of evidence that Appellant acted in sudden passion, the issue of voluntary manslaughter was not raised. *See Marras,* 741 S.W.2d at 405; *Ojeda,* 712 S.W.2d at 744. The level of emotional response described by Appellant certainly justified the submission of the self-defense instruction by the trial court, and that instruction fully and adequately covered the defensive posture raised by the evidence. *See Lopez,* 716 S.W.2d at 129. Point of Error No. One is overruled.[1]

1. Our holding is expressly limited to the facts

developed in this trial. The propriety of giving

In Point of Error No. Two, Appellant contends that the trial court erred in submitting an instruction on provoking the difficulty because it was not raised by the evidence. A jury instruction on provoking the difficulty is properly given when: (1) self-defense is an issue; (2) there are facts in evidence which show that the deceased made the first attack on the defendant; and (3) the defendant did some act or used some words intended to and calculated to bring on the difficulty in order to have a pretext for inflicting injury upon the deceased. *Matthews v. State,* 708 S.W.2d 835, 837–38 (Tex.Crim. App.1986); *Williamson v. State,* 672 S.W.2d 484, 486 (Tex.Crim.App.1984). This determination is limited to whether there is any evidence raising the issue. *Matthews,* 708 S.W.2d at 838. It is error to charge on the issue of provoking the difficulty when the testimony does not raise that issue because it puts the defendant in the wrong and is a limitation on the right of self-defense. *Williamson,* 672 S.W.2d at 485.

Self-defense was raised by the testimony of Appellant who testified that he shot Vasquez when he charged him with the knife, and the jury was charged accordingly. The second element is supported by evidence in the record which shows that on the evening of the shooting, Vasquez, while armed with a knife, made the first assault by threatening to kill Appellant. Finally, there is also evidence in the record that Appellant provoked the second encounter with Vasquez by pointing the rifle first at Mr. Schaeffer and then at Vasquez. The evidence, if believed, showed that Appellant had told Mrs. Schaeffer approximately one week earlier that he was going to kill Vasquez. Given Appellant's stated intention to kill Vasquez, Vasquez' threat to kill Appellant with the knife, and Appellant's promise to return, the jury could conclude that Appellant returned to the motel and pointed the gun at Schaeffer and Vasquez to provoke an attack by Vasquez in order to have a pretext for killing him. *See Torres v. State,* 722 S.W.2d 189, 190–91 (Tex.

App.—Houston [14th Dist.] 1986, no pet.). Point of Error No. Two is overruled.

In his third point of error, Appellant contends that the trial court erred by failing to include an instruction in the law on self-defense which permitted the jury to consider the verbal threats made by the deceased. He also argues that the charge given did not apply the law to the facts. The jury was instructed as follows:

> You are further instructed that in determining the existence of real or apparent danger, it is your duty to consider all of the facts and circumstances in evidence in the case before you and consider the *words,* acts, and conduct, if any, of ISAEL CARO VASQUEZ at the time of and prior to the time of the alleged killing, if any, and in considering such circumstances, you should place yourselves in defendant's position at that time and view them from his standpoint alone. [Emphasis added].

Appellant argues that the jury should have been given the instruction found in *Ellis v. State,* 811 S.W.2d 99, 101 (Tex.Crim.App. 1991) which provides as follows:

> You are further instructed that where a defendant accused of murder seeks to justify himself on the grounds of threats against his own life, he is permitted to introduce evidence of the threats made, but the same shall not be regarded as affording justification for the offense unless it be shown at the time of the homicide the person killed by some act then done manifested an intention to execute the threats so made, if any.

The Court did not require that the specific instruction stated in *Ellis* be given when there is evidence of verbal threats. Rather, *Ellis* generally requires that when evidence is presented that the victim verbally threatened the defendant and that the defendant may have acted in self-defense, a charge on self-defense should not be restricted to only the *acts* of the victim; verbal threats should be included as well. *Ellis,* 811 S.W.2d at 101. In the instant case and unlike *Ellis,* the jury

---

an instruction or refusing to charge the jury on a particular issue will depend upon the particular facts developed at the retrial. The same holds

true for the error alleged in Point of Error No. Two.

was instructed to consider the *words* and conduct of the deceased in determining the existence of real or apparent danger. This instruction was applied to the facts in the application paragraph and adequately permitted the jury to consider the verbal threats of the deceased. Point of Error No. Three is overruled.

In his final point of error, Appellant contends that his trial counsel was ineffective in the guilt-innocence phase of trial. He complains that trial counsel failed to: file a pretrial motion pursuant to TEX.R.CRIM.EVID. 609(f), properly object to a remote murder conviction used to impeach Appellant, obtain an instruction limiting the jury's consideration of the prior murder conviction, and object to the final argument of the prosecutor.

The standard by which we review the effectiveness of counsel at the guilt-innocence stage of a non-capital trial was articulated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex.Crim.App.1993). The Supreme Court in *Strickland* outlined a two-step analysis. *Menchaca*, 854 S.W.2d at 131. First, the reviewing court must decide whether trial counsel's performance failed to constitute "reasonably effective assistance". *Id.* Stated differently, the question is whether trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* If counsel's performance fell below the objective standard, the reviewing court then must determine whether there is a "reasonable probability" the result of the trial would have been different but for counsel's deficient performance. *Menchaca*, 854 S.W.2d at 131. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Menchaca*, 854 S.W.2d at 131. Absent both showings, we cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Strickland*, 466 U.S. at 687,

104 S.Ct. at 2064; *Menchaca*, 854 S.W.2d at 131.

▆ During cross-examination of Appellant, the prosecutor asked him whether he was the same Joe Miguel Ramirez, who, on the 2nd day of May, 1974, was convicted of the offense of murder with malice aforethought. Out of the hearing of the jury, trial counsel objected on the ground that it was improper admission of an *extraneous offense* during the guilt or innocence phase. The prosecutor told the trial court that he believed that counsel was objecting on the grounds that it was "improper impeachment" and trial counsel agreed. However, no ruling was secured and the prosecutor was permitted to ask the question. Appellant then admitted that he had been so convicted and had received a forty-year sentence.

Since trial occurred in 1991, the 1974 conviction was sixteen years old. Consequently, without evidence that Appellant was released from prison within ten years of the date of trial, the conviction was presumptively outside of the ten-year limit set by TEX.R.CRIM. EVID. 609(b). The State claims that the conviction was not remote because Appellant was released from prison in 1983; however, the State conceded at oral argument that there is no evidence of Appellant's release date in the record. We find that the objections made were insufficient to apprise the trial court that Appellant sought to have evidence of the conviction excluded on the specific basis that the prejudicial effect of the prior conviction outweighed its probative value under Rule 609(a) and that it was too remote under Rule 609(b).[2] Although the burden was on the State to establish that the probative value of the conviction outweighed its prejudicial effect, *see Theus v. State*, 845 S.W.2d 874, 880 (Tex.Crim.App.1992), Appellant's failure to object and secure a ruling waived any error in this regard. TEX. R.APP.P. 52(a). Rule 609(b) provides that even though a conviction may be beyond the ten-year limit, it still may be admitted if the trial court determines that the probative value of the conviction supported by specific

---

**2.** Even if the objections were adequate, trial counsel failed to secure a ruling. Thus, any error was not preserved. TEX.R.APP.P. 52(a);

*Lewis v. State*, 664 S.W.2d 345 (Tex.Crim.App. 1984); *Edwards v. State*, 813 S.W.2d 572, 576 (Tex.App.—Dallas 1991, pet. ref'd).

facts and circumstances substantially outweighs its prejudicial effect. TEX.R.CRIM. EVID. 609(b). Again, the burden would be on the proponent of the evidence to demonstrate its admissibility under Rule 609(b). *See Theus,* 845 S.W.2d at 880. However, counsel made no objection on this ground and failed to secure a ruling. Thus, any error was waived. TEX.R.APP.P. 52(a).

■ The record shows that counsel did not attempt to discover whether the State intended to impeach Appellant with this prior conviction by filing a written request pursuant to TEX.R.CRIM.EVID. 609(f). After its admission, he failed to minimize the possible harm by requesting an instruction limiting the jury's consideration of the prior conviction for impeachment purposes only. Finally, he did not object to the prosecutor's final argument in which he used the prior conviction to argue Appellant's propensity to kill. It is difficult to imagine a more powerful rejoinder to his claim of self-defense. For these reasons, counsel's performance fell below the "objective standard of reasonableness under prevailing professional norms." *Menchaca,* 854 S.W.2d at 132. The first step of *Strickland* is satisfied. *See Menchaca,* 854 S.W.2d at 132.

We must now determine whether counsel's deficient conduct was sufficient to undermine our confidence in the verdict. *Menchaca,* 854 S.W.2d at 132. When addressing the second step of *Strickland,* we examine counsel's errors not as isolated incidents, but in the context of the overall record. *Menchaca,* 854 S.W.2d at 132. The record reflects that all of the witnesses, including Appellant, told differing, if not contradictory, versions of the shooting and the events which led up to it. The State's witnesses were significantly impeached by the efforts of trial counsel. However, since the only issue in this case was whether Appellant shot Vasquez in self-defense, Appellant's credibility was critical. The evidence of this prior murder conviction was used by the State not only to attack Appellant's general credibility, but also was used to argue his propensity to commit murder, thereby destroying his self-defense claim in the process. *See Menchaca,* 854 S.W.2d at 133. The course of conduct undertaken by

trial counsel cannot be considered sound trial strategy. *Menchaca,* 854 S.W.2d at 132–33. We find that Appellant has satisfied the second step of *Strickland* because counsel's deficient performance is sufficient to undermine our confidence in the verdict. *See Menchaca,* 854 S.W.2d at 133. Point of Error No. Four is sustained.

Having sustained Point of Error No. Four, the judgment of the trial court is reversed, and this cause is remanded to the trial court for a new trial.