In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00109-CV
______________________________

W. A. HUFFMAN, Appellant
 
V.
 
BANCORPSOUTH BANK, Appellee

                                              

On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 2003-6165-CCL

                                                 

Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

            Appellant, W. A. Huffman, has filed a motion asking this Court to dismiss his appeal.
Pursuant to Tex. R. App. P. 42.1(a)(1), we grant his motion to dismiss this cause.
            We dismiss the appeal.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          January 18, 2005
Date Decided:             January 19, 2005

Brackle v.
State, 179 S.W.3d 708, 712 (Tex. App.--Austin 2005, no pet.). 

 Walters complains that the charge, as given, did not adequately inform the jury that
apparent danger was to be measured from the standpoint of the defendant, and completely
failed to instruct the jury that it could consider prior threats made by the decedent. When
a jury considers whether a defendant acted in self-defense, it must "view the
reasonableness of the defendant's actions solely from the defendant's standpoint." 
Ex parte Drinkert, 821 S.W.2d 953, 955 (Tex. Crim. App. 1991) (citing Bennett v. State,
726 S.W.2d 32, 37-38 (Tex. Crim. App. 1986)). As the court stated in Bennett, the
reasonableness of the defendant's belief "must be judged from the standpoint of the
accused at the instant he responds to the attack." 726 S.W.2d at 37-38; Davis v. State,
104 S.W.3d 177, 181 (Tex. App.--Waco 2003, no pet.). (2)

 That viewpoint necessarily includes verbal threats that occurred before, as well as
at the time of, the incident at bar. The instruction on self-defense sent to the jury in this
case does instruct the jury that the defendant may use deadly force to the degree he
reasonably believes the deadly force is immediately necessary to protect himself, and then
later defines a "[r]easonable belief" as "a belief that would be held by an ordinary and
prudent man in the same circumstances as the actor." It does not, however, contain any
language explaining to the jury that it could, in its consideration of self-defense, consider
verbal threats made by the decedent toward Walters. Further, the only mention of verbal
provocation found in the instruction is a limitation on self-defense stating that the use of
force "is not justified in response to verbal provocation alone." (3)

 As acknowledged by the Texas Court of Criminal Appeals in Ellis v. State, 811
S.W.2d 99 (Tex. Crim. App. 1991), a defendant is entitled to a charge regarding verbal
threats made by the victim toward the defendant--and not only those that occurred at the
time of the shooting. See Barkley v. State, 152 Tex. Crim. 376, 214 S.W.2d 287 (1948)
(cited by Ellis, 811 S.W.2d at 101, also noting threats on days before the killing).

 The standard of review for errors in the jury charge depends on whether the
defendant properly objected. Mann v. State, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998);
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); Gornick v.
State, 947 S.W.2d 678, 680 (Tex. App.--Texarkana 1997, no pet.). If a proper objection
was raised, reversal is required if the error "is calculated to injure the rights of defendant." 
Almanza, 686 S.W.2d at 171. In other words, an error that has been properly preserved
is reversible unless it is harmless. Id. 

 Counsel objected on these grounds and tendered a correct instruction. In light of
the fact that self-defense was the only real issue before the jury, we hold that the trial
court's failure to specifically instruct the jury concerning prior verbal threats by the decedent
was "calculated to injure the rights of the defendant" and was, therefore, harmful, and
reversible error. We sustain Walters' contention.

 B. Erroneous Provocation Instruction 

 Walters also states, in a single sentence in his brief, that the charge erroneously
included language regarding provocation by the defendant, although there was no
evidence that he provoked the decedent. This contention is unsupported by any analysis
or argument. When a point of error is inadequately briefed, we will not address it. Vuong
v. State, 830 S.W.2d 929 (Tex. Crim. App. 1992). We may not brief a defendant's case
for him or her. See Heiselbetz v. State, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995). 
Although this issue was clearly preserved at trial, it is inadequately briefed on appeal, and
is overruled.

III. Three 9-1-1 Calls and a Fourth Telephone Call

 Walters also contends the trial court erred by "allowing the State to publish 911 tape
conversations to the jury, then denying defendant's request to introduce identical,
contradictory evidence , thereby denying him confrontation of witnesses for the State and
requiring him to testify in his own defense." The context of this alleged error came during
the testimony of sheriff's deputy Sean English, a dispatcher for the sheriff's office at the
time of the shooting. 

 English testified on direct examination concerning three 9-1-1 calls received at the
sheriff's office on the day of the shooting, and one telephone call he initiated to Walters
immediately following the 9-1-1 calls. The first 9-1-1 call, received at 2:06 p.m., was from
an unidentified female calling from the Tabernacle Baptist Church about "some type of
disturbance." English dispatched an officer to the area. At 2:08 p.m., English received
another 9-1-1 call with regard to the situation at the Tabernacle Baptist Church. This call
was from an unidentified male at Walters' residence who informed English that "[a] man
has been shot at the . . . church." English then dispatched emergency medical services'
personnel and other officers to the scene. A third 9-1-1 call was received at 2:13 p.m. from
a person identified as Carolyn Mobley, calling from a cell phone. This caller advised she
was at the church parking lot with the shooting victim, whom she identified as "Russell
Walters." She further advised that "John Walters" was the shooter and that he had gone
to his residence. Mobley described the location of that residence, which was nearby. 
English advised the officers of this information, and two units went to Walters' residence. 
The State then offered its Exhibit No. 1, a CD recording that included the three 9-1-1 calls
from that day. Walters objected on the ground of hearsay, but the objection was overruled
and the recording of the three 9-1-1 calls was played for the jury. 

 English then testified that, after the three 9-1-1 calls, at approximately 2:25 p.m., he
placed a telephone call to the "John Walters residence" from which he had received the
second 9-1-1 call. English testified that the male person who answered the telephone
identified himself as "John Walters" and that it appeared to be the same person who made
the second 9-1-1 call. English said he then asked Walters if he wanted to talk about what
had happened. The State interrupted English and proceeded to question him about what
was said to Walters concerning the firearm used in the shooting. English testified he told
Walters to unload the firearm and put it away. He also said he told Walters the officers
were outside his house and for him to "come out with his hands up where the officers could
see them." English quoted Walters as saying "he'd hang the phone up, and he'd be right
out." This telephone conversation between English and Walters was also recorded at the
sheriff's office. 

 On cross-examination, English reiterated that, after the three 9-1-1 calls, he
telephoned Walters and asked him if he wanted to talk about what had happened. 
However, when Walters' counsel asked English what Walters had said in response, the
State objected on the ground of hearsay. The trial court sustained the objection. 

 Walters later offered into evidence a CD recording of the three 9-1-1 calls, plus the
telephone call English initiated to Walters. The trial court reiterated its previous ruling
concerning the call English made to Walters and denied Walters' offer to publish that
conversation to the jury. The court, however, received the evidence for the record on
Walters' offer of proof. That evidence shows that, when English telephoned Walters and
asked him, "What's happening, man?" Walters responded, "My brother came up here
threatening me, one of several times. He told me one time that he was going to kill me,
out there at the barn." Walters contends this evidence was admissible under three rules
of evidence: the rule of optional completeness, (4) as a present sense impression, (5) and as
an excited utterance. (6) Because the rule of optional completeness compelled the admission
of this evidence, it is unnecessary to discuss the other grounds for admission contended
by Walters. 

 A. Standard of Review

 The standard of review for a trial court's ruling under the rules of evidence is abuse
of discretion. Angleton v. State, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998). As explained
below, to admit into evidence--over a hearsay objection--three of four related telephone
conversations, and then exclude the fourth conversation--by sustaining a hearsay
objection--was an abuse of discretion.

 B. Rule of Optional Completeness

 Under the rule of optional completeness, when only a portion of an act, declaration,
conversation, writing, or recorded statement is introduced, the adverse party is entitled to
introduce into evidence the remaining parts or any related act, declaration, writing, or
recorded statement necessary to a full understanding of the evidence, or to explain that
evidence. Tex. R. Evid. 107. Rule 107 is one of admissibility and permits the introduction
of otherwise inadmissible evidence when that evidence is necessary to fully and fairly
explain a matter "opened up" by the adverse party. See Johnson v. State, 747 S.W.2d
451, 453-54 (Tex. App.--Houston [14th Dist.] 1988, pet. ref'd). "The so-called rule of
optional completeness takes effect when other evidence has already been introduced but
is incomplete and misleading." Jones v. State, 963 S.W.2d 177, 182 (Tex. App.--Fort
Worth 1998, pet. ref'd). "Once an evidentiary door has been opened by one side, this rule
serves to allow the other side to complete the picture." West v. State, 121 S.W.3d 95, 103
(Tex. App.--Fort Worth 2003, pet. ref'd).

 Rule 107 was implicated in this case when English testified that he asked Walters
if he wanted to talk about what had happened. To then exclude Walters' response
deprived the jury of the remaining parts necessary to a full understanding of the evidence,
in violation of the rule of optional completeness. Walters' recorded response to English's
question was "necessary to fully and fairly explain a matter 'opened up' by the adverse
party." See id. at 103. The absence of Walters' response made English's testimony
incomplete.

 The State contends this evidence was properly excluded as hearsay. However,
when a party "opens the door" on an issue by attempting to present an incomplete picture
of an incident, the opposing party is then permitted to complete the picture by presenting
evidence that would have otherwise been inadmissible. Arebalo v. State, 143 S.W.3d 402,
408 (Tex. App.--Austin 2004, pet. ref'd). 

 Walters contends that, because he did not offer the recording for the truth of the
words spoken, it was not hearsay. He argues that, because the State was allowed to
create a false impression that Walters was calm about shooting his brother, the excluded
evidence was necessary to dispel that falsehood and in order for him to cross-examine
witnesses regarding his alleged calmness. 

 The State made Walters' state of mind a key issue in this case by focusing on
Walters' calm demeanor during the conversations with police. Walters' demeanor was so
presented to show that his actions were calmly intentional and premeditated. This focus
is apparent in the State's questioning of English concerning the second 9-1-1 call:

 Q I want to talk to you specifically about the second 9-1-1 call that
came from the suspect, John Walters', residence. From that phone call, was
there any indication, during that call, as to that the person calling was the
person that did the shooting?

 

 A Not at that time, no.

 

 Q Was there anything that would suggest that during that call?

 

 A No, sir.

 

 Q All right. And would you classify the emotional state of that
particular caller as being excited?

 

 A No, sir.

 

 Q What would you characterize it as being during that call?

 

 A Calm.

 

 . . . .

 

 Q . . . From your experience as being a dispatcher for three years,
have you ever received calls like this before with regards to incidents?

 

 A Like this before?

 

 Q Yeah.

 

 A No, sir.

 

 Q Where just somebody would call and say, "Hey, somebody's
been shot"?

 A No, sir, not exactly in those words.

 Q All right. Seemed to be a little out of the ordinary?

 A A little bit.

 Q What would you have expected?

 A Somebody very excited, shaky, even, maybe.

 Q Did you get that here on this 9-1-1 call?

 A No, sir.

 English's testimony concerning his conversations with Walters consisted of the
declarations of two individuals as recounted by one participant, including only a portion of
the content, but describing Walters' demeanor. Walters sought to introduce a recording
of the entirety of those conversations, that would have included the remainder of the
content, and allowed the jury to determine for itself his demeanor without filtration through
a third party. This is the very purpose of the rule of optional completeness. Compare
Credille v. State, 925 S.W.2d 112, 116-17 (Tex. App.--Houston [14th Dist.] 1996, pet.
ref'd) (when defendant questioned witness about content of videotaped interview, State
entitled to offer videotape into evidence); and Solano v. State, 728 S.W.2d 428, 430-31
(Tex. App.--San Antonio 1987, pet. ref'd).

 C. Harm Analysis

 The next question is whether the error harmed Walters. At trial, and now on appeal,
Walters argued that because the recording was not admitted, it would become necessary
for him to relinquish his Fifth Amendment rights and take the stand in order to place his
emotional state before the jury. The State contends the exclusion of the evidence was
necessarily harmless because Walters testified about those matters. That misses the point
of Walters' argument: that he only testified because the court erroneously refused to admit
the only other evidence that could show his state of mind or demeanor and that it,
therefore, became necessary for him to testify and give up his right to remain silent in order
to have any way to adequately confront and cross-examine the witnesses against him. 
Walters contends the recording would have assisted the jury in determining his state of
mind and demeanor--certainly more than his trial testimony--and that, had that recording
been admitted, he would not have subjected himself to cross-examination. This is the
same argument raised before the trial court, and it is fairly before us now.

 Walters' contention contains connected constitutional components. The right to
remain silent is raised, the argument being that it was violated because the erroneous
exclusion of evidence required Walters to testify so that his defensive theory could be
raised by something more than rank speculation. His right to adequately confront and
cross-examine the State's witnesses is likewise raised. A defendant's federal Sixth
Amendment right to confront and cross-examine adverse witnesses is an essential element
of a fair trial. See Pointer v. Texas, 380 U.S. 400, 405 (1965). The Confrontation Clause
of the United States Constitution guarantees the accused an adequate opportunity to
cross-examine an adverse witness. Davis v. Alaska, 415 U.S. 308, 315-16 (1974). The
constitutional right of confrontation means something more than merely bringing the
accused and the witnesses face to face; it embodies and carries with it the valuable right
of cross-examination of the witness. Baltierra v. State, 586 S.W.2d 553, 557 (Tex. Crim.
App. 1979). 

 Error in the admission of evidence is not itself typically of constitutional dimension. (7) 
Exclusions of evidence reach constitutional dimension and are unconstitutional if they
"significantly undermined fundamental elements of the accused's defense." United States
v. Scheffer, 523 U.S. 303, 315 (1998); Potier, 68 S.W.3d at 666. In this case, the record
shows that error directly resulted in the violation of not one, but two separate constitutional
rights. The error is constitutional in scope. As a constitutional error, the appellate court
applies Rule 44.2(a) and reverses unless it determines beyond a reasonable doubt that the
error did not contribute to the appellant's conviction or punishment. See Tex. R. App. P.
44.2(a). It cannot be so determined in this case. 

 Neither the record nor the State suggest any other method by which Walters might
have provided any underpinning to his defensive argument--that his actions were not
premeditated or calmly and coolly taken--than either the excluded evidence or his own
testimony. Counsel stated categorically at the trial that Walters would have to take the
stand if the evidence was not admitted, and that is precisely what happened. Walters did
present his position, but also subjected himself to exhaustive cross-examination by the
State totaling ninety-one pages of the reporter's record. 

 Further, neither the record nor the State suggest any other method of providing
Walters with a basis for confronting and adequately cross-examining English about
Walters' mental or emotional state as shown by the recording, or a nurse who also opined
about his emotional state during the second 9-1-1 call. 

 Under these facts, and in light of the entirety of the record, it cannot be concluded
beyond a reasonable doubt that the error did not contribute to Walters' conviction or
punishment. 

Conclusion

 Because we unanimously hold that the trial court's failure to instruct the jury
concerning prior verbal threats by the decedent was harmful error, we reverse the
judgment and remand to the trial court for a new trial.

 Donald R. Ross

 Justice

CONCURRING OPINION

 Because I agree with the lead opinion that the failure to instruct the jury concerning
prior verbal threats was reversible error, I concur in that part of the lead opinion and in the
judgment remanding the case for a new trial. However, I disagree with the analysis
regarding the application of the rule of optional completeness. 

 It is important to place the conversations of John Arlin Walters in the proper
sequence to understand the context of the issue. Sean English received his first call from
Walters (at which time he only knew it was a male voice from Walters' residence) at 2:08
p.m. This call simply informed English that "[a] man had been shot at the . . . church." 
This call was recorded and played in its entirety for the jury. At 2:25 p.m., English then
called Walters' residence and had conversed with Walters. These are the only two
conversations that have any relevance to the issue of the admissibility of Walters'
statements to English. The lead opinion states that Rule 107 was implicated when English
testified that he asked Walters if he wanted to talk about what happened. It must be noted
that the State did not attempt to introduce any statements of Walters from this conversation
other than Walters' statement that he would "be right out." Likewise, the State never
sought to introduce the tape-recorded conversation from this telephone call. In fact, there
was no reference made that such a recording even existed until counsel for Walters cross-examined English. Clearly, the tape-recorded conversation itself was inadmissible as the
State had not attempted to offer any portion of it into evidence. See Washington v. State,
856 S.W.2d 184, 186 (Tex. Crim. App. 1993).

 The testimony of English about the conversation with Walters included only the
statement from Walters that he would "be right out." It is proper to introduce a
conversation when specific statements made during the conversation which, taken out of
context, could have created the possibility of the jury receiving a false impression from
hearing only a part of the conversation. Sauceda v. State, 129 S.W.3d 116, 123 (Tex.
Crim. App. 2004). But here, the State did not introduce any specific statement from that
conversation that could mislead the jury. The suggestion is that English's general
statement that he asked Walters if he wanted to talk about what happened is somehow
misleading the jury or allowing the jury to receive a false impression from hearing only that
question. I disagree that any testimony of English regarding this call to Walters had any
tendency to mislead, confuse, or leave a false impression with the jury. Therefore, that
justification for admitting this hearsay testimony of Walters' comments to English is not
present.

 Further, the optional completeness rule requires that, when part of a conversation
or recorded statement is given in evidence by one party, the whole on the same subject
may be inquired into which is necessary to make it fully understood or to explain the same. 
Tex. R. Evid. 107. Only parts or items of evidence germane to the part or item offered ("on
the same subject") become admissible. Arebalo v. State, 143 S.W.3d 402, 408 (Tex.
App.--Austin 2004, pet. ref'd). Was the evidence proffered by Walters on the same
subject as that presented by the State? I do not believe that it was. The subject 
introduced by the State concerned the desire of the police officers for Walters to peacefully
surrender. In response, Walters sought to introduce his statements concerning threats
Russell Walters made to him. The purpose of the rule of optional completeness is to
"reduce the possibility of the fact finder receiving a false impression from hearing the
evidence of only part of an act." See Kinnamon v. State, 791 S.W.2d 84, 101 (Tex. Crim.
App. 1990) (citing Evans v. State, 643 S.W.2d 157, 161 (Tex. Crim. App. 1982)), overruled
on other grounds by Cook v. State, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). This
rationale explains why it is necessary for the proffered testimony to address the same
subject matter as that introduced by the other party. The State did not attempt to offer any
evidence that could be regarded as inquiring into whether Walters was justified in killing
his brother. Consequently, it was not proper to allow Walters to offer hearsay testimony
on that subject. The Texas Court of Criminal Appeals has explained that the evidence
must be relevant to the issue originally placed before the court. Jernigan v. State, 589
S.W.2d 681, 694-95 (Tex. Crim. App. [Panel Op.] 1979). 

 In similar situations, courts have approved limitations placed on the scope of
testimony. In Goldberg v. State, 95 S.W.3d 345, 387 (Tex. App.--Houston [1st Dist.] 2002,
pet. ref'd), an officer testified about his conversation with the defendant and said that he
discussed with him his "activities of the day" and the defendant told him he had been
playing football and gave the officer names of people who had been playing football with
him. Thereafter, the defendant sought to inquire of the officer everything the defendant
told the officer about the "activities of the day." The trial court, properly, allowed Goldberg
to question Sampson about the same subject, i.e., Sampson's conversation with Goldberg
regarding the football game. It did not, however, allow Goldberg to present, through the
state's witness, his entire version of the events of the day of the murder. The court
reasoned that the evidence sought to be introduced was not on the same subject and
would have been self-serving hearsay by Goldberg and that it was not necessary to correct
a false or incorrect impression created by the officer's testimony. See Jones v. State, 963
S.W.2d 177, 182 (Tex. App.--Fort Worth 1998, pet. ref'd) (stating Rule 107 permits
self-serving hearsay statements by defendant only when necessary to correct false
impression created by hearing only part of statement). 

 Here, the evidence presented by the State that an officer called Walters' home and
talked with him contains no conversation that requires or authorizes the introduction of
hearsay evidence to correct. The only reference to a statement by Walters was that "he'd
be right out." The statements made to the officer by Walters concerning his justification
for shooting Russell are not germane to any issue placed before the court and jury by the
State. Consequently, I do not believe the rule of optional completeness applies in this
situation. The court properly sustained a hearsay objection to the evidence. 

 Similarly, the call to Walters' residence is not a continuation of the prior conversation
that would require admission to complete the cycle of conversations. The telephone calls
stand independently, and one is not needed to understand the other. Walters argues that
it was necessary to introduce his statement to English concerning Russell's threats
because the State had urged that Walters' demeanor was calm, not excited. However, a
close examination of the record reveals that the evidence concerning Walters' demeanor
referred only to the 9-1-1 call Walters made reporting that "[a] man had been shot at the
. . . church." The entire passage quoted in the lead opinion concerning the demeanor
issue refers to the 2:08 p.m. call that Walters apparently made to the 9-1-1 operator and
does not involve the later call English made to Walters. The State made it clear in
questioning the officer about the demeanor of Walters, that it was referring to the earlier
9-1-1 call, not the call English later made to the residence. English explained that the
caller (who he did not know was Walters when the call occurred) was not emotional, but
was calm. He further stated that this was extraordinary and that he would have expected
the caller to be more excited. However, it cannot be argued that the jury was uninformed
as to Walters' demeanor during the 2:08 p.m. call, as this entire telephone conversation
was played for the jury, and the jurors could evaluate Walters' tone and demeanor just as
English did. The State did not attempt to introduce any evidence of Walters' demeanor
during the conversation, which occurred when English called Walters' residence. The two
telephone calls are not intertwined, and they are not continuations of a single conversation. 
Indeed, as previously pointed out, the final call by the deputy to the home of Walters was
not a continuation of the prior call, but an attempt to ensure that Walters was not about to
shoot the officers who were then converging on Walters' residence. Essentially, the lead
opinion holds that, since English testified that Walters sounded calm during his first call
(which was played to the jury), Walters should be allowed to introduce the content of the
unrelated second conversation, presumably to show he was not calm during the second
conversation. Since the State did not present any evidence concerning Walters' demeanor
during the 2:25 p.m. call, there was no justification for allowing the hearsay testimony as
rebuttal of demeanor evidence. 

 We review the admission and exclusion of evidence for an abuse of discretion, and
we do not reverse the decision absent a clear abuse of discretion. See Apolinar v. State,
155 S.W.3d 184, 186 (Tex. Crim. App. 2005). A court abuses its discretion when its ruling
is outside the zone of reasonable disagreement. Id.; see Green v. State, 934 S.W.2d 92,
102 (Tex. Crim. App. 1996); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1990) (op. on reh'g). In this instance, I do not believe that the trial court was outside the
zone of reasonable disagreement in excluding the proffered testimony. I do not believe an
abuse of discretion has been shown, and I would affirm this portion of the case. 

 I concur in the judgment of the court. (8)

 Jack Carter

 Justice

Date Submitted: May 1, 2006

Date Decided: November 3, 2006

Publish

1. We will refer to the decedent by his first name to distinguish him from the appellant.
2. See Turner v. State, 87 S.W.3d 111, 117-18 (Tex. Crim. App. 2002), agreeing that
the self-defense claim should be reviewed based on the standpoint of the actor--but
emphasizing that the actor should be the hypothetical ordinary and prudent person, rather
than the standpoint of a sociopath.
3. We also note that the sample charge provided in Section 12:1100.40 of the Texas
Criminal Jury Charges, contains a paragraph that explains much more clearly to the jurors
the necessity to place themselves in the defendant's position at the time, and to consider
all the facts and circumstances including the previous relationship between the two in
making its determination. 2 Berry & Gallagher, Texas Criminal Jury Charges
 12:1100.40 (2005).
4. Tex. R. Evid. 107.
5. Tex. R. Evid. 803(1).
6. Tex. R. Evid. 803(2).
7. Where erroneous exclusion of evidence is the result of misapplication of the rules
of evidence and its admission is not claimed to be required by the United States or state
constitutions, we analyze harm under Rule of Evidence 103(a), which provides that error
may not be predicated upon a ruling that admits or excludes evidence unless a "substantial
right" of the party is affected. Tex. R. Evid. 103(a); Potier v. State, 68 S.W.3d 657, 666
(Tex. Crim. App. 2002). The standard is the same as that under Rule 44.2(b). Tex. R.
App. P. 44.2(b); Elmore v. State, 116 S.W.3d 801, 808 (Tex. App.--Fort Worth 2003, pet.
ref'd).
8. Chief Justice Morriss joins in this concurring opinion.