Jones-SL v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-075-CR

     SAMUEL LEE JONES,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 204th District Court
Dallas County, Texas
Trial Court # F92-73889-WQ
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant Jones appeals his conviction for murder (enhanced by a prior felony conviction) for
which he was sentenced to 70 years in the Texas Department of Criminal Justice, Institutional
Division.
      On December 27, 1992, David Green (the deceased) and his girlfriend Denise Adams, after
drinking fourteen cans of beer, decided to go to Appellant's house. Appellant and his wife Tonja
were at the house. The deceased, Appellant, Denise and Tonja began to play spades, a card game. 
The deceased began playing out of turn, which Appellant did not like. Appellant then asked the
deceased and Denise to leave. Denise walked toward the door and the deceased and Appellant
were talking. The deceased and Appellant started fighting, hit the wall, and ended up falling on
a couch. The deceased was not armed. Appellant told his wife to call the police, then told her
to bring him a knife.
      Denise asked Tonja not to get the knife and said she would get the deceased out of the house. 
She then pulled the deceased out the door. The deceased and Denise walked approximately 68 feet
from Appellant's house. Appellant, who had secured a nine-inch knife, came out of the house and
approached the deceased face-to-face. Denise saw the deceased throw up his arms. Then
Appellant's arm went up and came down and the deceased hit the ground about 70 feet from
Appellant's house. Appellant testified that he "accidently stabbed the deceased and that he was
`protecting himself'." Appellant then ran back into his house and he and his wife commenced to
pray. The deceased had a stab wound in the left side of his chest and died as a result of the
wound. The medical examiner testified that, in his opinion, this was not an accidental death but
was a homicide. Appellant was indicted for murder and was convicted by a jury. In the
punishment phase, two prior felony convictions and a misdemeanor drug possession were proved
up. The jury assessed Appellant punishment at 70 years in prison.
      Appellant appeals on six points of error.
      Point one: "The State's investigative process resulted in a trial that violated Appellant's right
to due process of law."
      Appellant claims his right to due process of law was violated by the police investigation which
failed to collect as evidence a lawn sprinkler seen at the scene. He contends that the officer's
failure to collect the sprinkler as evidence hindered his theory of self-defense because the sprinkler
could not be tested for the fingerprints of the deceased.
      Appellant testified that he was afraid of the deceased and that, when the deceased came toward
him, he saw the deceased had something in his hand.
      Denise Adams, who witnessed the stabbing, testified she did not remember anything about
a sprinkler. Officer Watson, who arrived at the scene while the deceased was being loaded into
the ambulance, testified the sprinkler head was near where the deceased was, but no one at the
scene told him the sprinkler was ever in the hands of the deceased. Officer Gorka, the physical
evidence officer, testified he did not collect the sprinkler near where the deceased was lying
because it had no bearing on the case; that the only reason to collect the sprinkler would have been
if it had been used as a weapon or was in the possession of either the suspect or the deceased, and
he never received any information to that effect. The sprinkler was, however, preserved through
photographs, and in the pictures appears to have blood on it. The only person who was bleeding
at the scene was the deceased. Appellant's wife never mentioned the sprinkler. Witness Mitchell
did not say that the deceased had a sprinkler. Appellant never told Officer Grable that the
deceased had come at him with the sprinkler. Witness Harris, who saw the stabbing, did not see
anything in the deceased's hands. He only saw the sprinkler head after the offense, while the
deceased was lying on the ground. Appellant never told anyone at the scene, including the police,
about the sprinkler.
      All the evidence shows that the police did not know, while collecting evidence, that Appellant
would later claim the deceased was coming at him with the sprinkler, so the officer had no reason
to collect the sprinkler as evidence and thus did not act in bad faith by failing to collect the
sprinkler.
      Absent a showing of bad faith on the part of the police, failure to preserve potentially useful
evidence does not, in and of itself, result in the denial of due process of law. Arizona v.
Youngblood, 488 U.S. 51, 57, S.Ct.; Ex parte Bradley, 781 S.W.2d 886, 894 (Tex. Crim. App.
1989) cert. denied, S.Ct. (1993); Gilbert v. State, 840 S.W.2d 138, 142 (Tex. App.—Houston [1st
Dist.] 1992).
      In this case, the totality of the evidence clearly shows that the police did not act in bad faith
in failing to preserve the sprinkler as evidence. Not a single witness, including Appellant, told
the police on the night of the stabbing that the deceased might have used the sprinkler as a weapon. 
The police therefore had no reason to believe that the sprinkler was evidence. Appellant's due
process rights were not violated.
      Point one is overruled.
      Point two: "The trial court committed reversible error when the opinion testimony of an
expert was allowed on the questions of whether or not the stabbing was accidental or intentional."
      During the direct examination of Dr. Odom, a Dallas County Medical Examiner, the
following occurred:
      Q.  Would the medical examiner's office be in a position to determine whether or
not a death such as that of David Green was accidental?
 
      A.  That is a determination or decision that we are called on to make in every case. 
We have to render an opinion as to whether a death is natural or unnatural; and
if unnatural, whether it's accident, homicide or suicide. The basis for our
decision rests on a variety of information, the injury itself as well as what our
understanding of the circumstances as to how the injury came about. In this
case it was our opinion that this was not an accidental but hom--
 
[DEFENSE COUNSEL]: I'm going to object to the hearsay aspects of it --
circumstances. We don't don't know what circumstances, who they've talked to,
anything like that whatsoever.
 
THE COURT:Objection - - 
 
[DEFENSE COUNSEL]: There's just no reasonable foundation for him to lay that
conclusion.
 
THE COURT: Objection is overruled.

      Appellant did not object until after Dr. Odom had stated that this was not an accidental death. 
In such situation the failure to timely object constitutes a waiver. Rodriquez v. State, 577 S.W.2d
491 (Tex. Crim. App. 1979); Girndt v. State, 623 S.W.2d 930 (Tex. Crim. App. 1981); Cisneros
v. State, 692 S.W.2d 78, 82 (Tex. Crim. App. 1985).
      Moreover, Dr. Odom's testimony was admissible under Tex. R. Crim. Evid. 702 which
provides that if specialized knowledge will assist the trier of fact to determine a fact in issue, an
expert witness may testify thereto in the form of an opinion, and was also admissible under Tex.
R. Crim. Evid. 704 which allows testimony in the form of an opinion even if it embraces an
ultimate issue to be decided by the trier of fact. Hernandez v. State, 772 S.W.2d 274, 275 (Tex.
App.—Corpus Christi 1989), is directly on point and holds that an expert can testify to an ultimate
issue of fact, citing Tex. R. Crim. Evid. 704.
      The trial court properly allowed Dr. Odom to give his opinion as to whether the stabbing was
accidental.
      Point two is overruled.
      Point three: "The trial court committed fundamental error by failing to charge the jury on the
issue of defense of property."
      Appellant did not request a charge on defense of property. The evidence shows that the
deceased had left Appellant's property and was in the yard of Appellant's next door neighbor,
some 68 feet from Appellant's house when he was stabbed.
      Appellant, by not requesting a charge on defense of property, waived same and, under the
evidence, a charge on defense of property was not authorized.
      Point three is overruled.
      Point four: "The trial court committed fundamental error by failing to charge the jury on the
issue of voluntary manslaughter."
      Appellant did not request a charge on voluntary manslaughter. Therefore, he must show that
the charge was fundamentally defective. The evidence does not raise the issue of sudden passion. 
Appellant testified he did not get mad when the deceased was hitting him inside the house. 
Appellant was hysterical after he stabbed the deceased, but before that he was "completely under
composure." Appellant further testified he never felt provoked by what the deceased had done and
that when he stabbed the deceased, his mind was very capable of cool reflection. Appellant's wife
testified that when the deceased went out the door, and Appellant chased him with a knife, that
Appellant was calm.
      An instruction on a lesser included offense is proper if: (1) proof of the charged offense
includes proof of the lesser included offense, and (2) some evidence exists that would permit a jury
to rationally find that if defendant is guilty, he is guilty only of the lesser included offense. 
Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). Voluntary manslaughter is a
lesser included offense of murder when the accused acted under the immediate influence of sudden
passion. Ramirez v. State, 873 S.W.2d 757, 759 (Tex. App.—El Paso 1994).
      The requirement that "sudden passion" be raised divides into two inquiries. Before a
defendant is entitled to an instruction on the lesser included offense of voluntary manslaughter,
there must be evidence showing: (1) legally adequate cause that would produce anger, rage,
resentment, or terror, sufficient to make an ordinary person incapable of cool reflection; and (2)
the accused's excited and agitated state of mind at the time of the killing was caused by direct
provocation by the victim. Brunson v. State, 764 S.W.2d 888, 894 (Tex. App.—Austin 1989, pet.
ref'd).
      In this case the evidence that Appellant was scared at the time of the stabbing, and that he was
very upset after the stabbing, does not amount to such evidence as to permit a jury to find that
Appellant was incapable of cool reflection. Moreover, Appellant testified he was "completely
under composure" and very capable of reflection when he stabbed the deceased. 
      There was no evidence sufficient to raise the issue of sudden passion and adequate cause and
the trial court did not err in failing to charge the jury on voluntary manslaughter. No fundamental
error occurred due to the court's charge.
      Point four is overruled.
      Points five and six: Appellant's right to effective assistance of counsel, as guaranteed by Art.
1, Sec. 10, of the Texas Constitution, and the Sixth and Fourteenth Amendments to the U.S.
Constitution, was violated by Appellant's trial counsel." 
      Strickland v. Washington, 466 U.S. 668, and Hernandez v. State, 726 S.W.2d 53, 57, set the
standards for analyzing a claim of ineffective assistance of counsel. These cases require a showing
that counsel's performance was deficient by norms of the community plus a showing that the
deficiency so undermined the proper functioning of the adversarial process that the trial cannot be
relied on as having produced a just result. This is judged by the totality of counsel's
representation and not by isolated acts and omissions. Solis v. State, 792 S.W.2d 95, 100 (Tex.
Crim. App. 1980). The burden of proving ineffective assistance of counsel is on the Appellant
and must be proved by a preponderance of the evidence. Moore v. State, 694 S.W.2d 528, 531
(Tex. Crim. App. 1985).
      Appellant asserts trial counsel was ineffective for failing to request jury charges on defense
of property and voluntary manslaughter, and for not properly objecting to Dr. Odom's testimony.
      As previously addressed, charges on defense of property and voluntary manslaughter were
not authorized by the evidence, and Dr. Odom's testimony was admissible.
      Appellant further asserts his counsel was ineffective during the punishment phase for failing
to call any witness other than Appellant. He says that his wife, mother, and former employer were
all available to testify in his behalf. Trial counsel may have chosen not to call those parties for
several reasons. They could have been so distraught over his conviction that they would not have
been effective witnesses on the issue of punishment. Trial counsel could have determined that
they, having testified in the guilt-innocence phase, that the jury was not responding to them as
witnesses. Appellant may have refused to have those witnesses called and have them subjected
to the witness stand again. This record does not show why counsel or Appellant chose not to call
any of these witnesses, or what they could have testified to. It must be presumed that the decision
was sound trial strategy.
      Moreover, from the record as a whole, we conclude that trial counsel was not ineffective
gauged by the standards imposed by Strickland and Hernandez.
      Points five and six are overruled.
      The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Chief Justice Thomas,
      Justice Cummings, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed May 31, 1995
Do not publish