In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00506-CR

____________


JOSE VENTURA ALONZO, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 180th District Court 

Harris County, Texas

Trial Court Cause No. 1056922 





MEMORANDUM OPINION



 A jury found appellant, Jose Ventura Alonzo, guilty of murder and assessed
his punishment at 40 years in prison. Appellant's two points of error challenge the
effectiveness of his trial counsel and the factual sufficiency of the evidence to
support his murder conviction. We affirm.


Factual Background


 Appellant was a friend of Juan Guzman, the murder victim, a 26-year old
Honduran national who was working in the United States as a bricklayer. Guzman
was shot and killed in his Houston apartment on February 7, 2006. Appellant's
sister, Blanca Alonzo, learned of the homicide from appellant and was the first
person to notify police of the homicide. 

 On the night of the murder, appellant telephoned Blanca at her home and
told her that friends of Guzman's ex-girlfriend had broken into Guzman's
apartment and killed him. Blanca told appellant to come to her apartment, and he
drove there in Guzman's truck, arriving shortly after midnight. Appellant was
visibly upset. He was displaying a black pistol that he kept placing against his
head while saying that he, too, wanted to die. The pistol was jammed, however,
and appellant wanted Blanca to help him "get it unstuck." Blanca had seen her
brother and Guzman in possession of a rifle previously, but had never seen the
pistol. Appellant eventually told Blanca to call the police and left her apartment in
Guzman's vehicle. He also told Blanca that people were following him and that he
was on his way to a club where he claimed the murderers had gathered. 

 On arriving at Blanca's apartment in response to her police summons,
Houston Police Officer R. Hernandez asked Blanca to telephone appellant at his
cellular telephone number, and then Hernandez spoke with appellant by telephone. 
Appellant told Hernandez that he was traveling south on Interstate 45. Hernandez
perceived that appellant was upset and possibly weeping, and appellant told
Hernandez that Guzman had killed himself. Hernandez kept trying to convince
appellant to return to Blanca's apartment to speak with police there, and appellant
repeatedly agreed to stop driving, but would then continue driving. Appellant
eventually told Officer Hernandez that he had parked in a restaurant parking lot
near Blanca's apartment, where he was waiting for police, but when officers
proceeded to that location to meet appellant, they did not find him there. 
Hernandez attempted to reach appellant again at his cellular telephone number, but
got no response. 

 Officer Hernandez then went with Blanca to Guzman's apartment complex,
where Harris County Deputy Sheriff H. Palacios interviewed her. At trial, Blanca
denied telling Palacios "at any time" that her brother admitted killing Guzman. (1)
During his investigation, Deputy Palacios heard many conflicting versions of the
events on the night of the murder, including that Guzman committed suicide, that
he died after a break-in at his apartment, and that he died at the hands of friends of
his former girlfriend, who had moved out of Guzman's apartment earlier in the
evening of his death. Deputy Palacios learned another version during his first
interview of Blanca on the night of the murder, when she told him that appellant
admitted to her that he had killed Guzman. (2) 

 While Detective Palacios was interviewing Blanca, the Harris County
Sheriff's Department received notice that appellant had been arrested 60-70 miles
away, in El Campo. He had been driving southbound on Interstate 59 when he was
stopped for reckless driving and arrested for driving without a license. While
appellant was being arrested, the officers detected an odor of alcohol on his breath.
They also noticed white foam coming from his mouth, and appellant admitted that
he had recently ingested cocaine. Appellant had no identification, but told officers
that his name was Jose Menchura, and that he had a gun, which was determined to
be a .380 pistol. Police recovered a bag of cocaine and an unfired .380 caliber
cartridge from appellant's pocket. Police inventory also revealed two wallets, one
of which contained $260 and multiple forms of identification for Guzman and was
identified at trial as belonging to Guzman. During processing, police overheard a
telephone conversation in which appellant told his girlfriend that he wanted to
leave the country, and that she should join him in Mexico. 

 Police investigation at Guzman's apartment on the night of the murder
revealed that his front door was unlocked and showed no evidence of damage
consistent with a forced entry. Despite contentions that Guzman committed
suicide, police found no weapon at the scene and noted that Guzman's body
appeared to have been moved after he was shot. Police canvassed the apartment
complex, but they found no witnesses to the crime, though some neighbors heard
what sounded like a gunshot. While cleaning the apartment approximately a week
after the murder, Guzman's brother found a .22 caliber rifle beneath a bed. 

 Forensic evidence at trial showed that Guzman suffered four gunshot
wounds, three of which were fatal. Two gunshot wounds were to Guzman's head. 
Forensic evidence established that one wound resulted from the muzzle of the gun
being pressed against Guzman's skin, and that this wound would have been
immediately fatal. The bullet from that wound passed through Guzman's skull and
lodged in a wall, leaving spatters of blood and hair residue on the wall. Bullets
recovered from that wall were matched to the .380 pistol in appellant's possession. 
The second head wound indicated that the gun was fired from six inches to three
feet away from the victim and, at a minimum, would have rendered Guzman
immediately unconscious. Guzman also suffered a fatal chest wound and a groin
injury--a wound that is inconsistent with suicide according to the medical
examiner, who had never known of a suicide committed in that manner. 
Fragments of three bullets were recovered from the body. The fragments
recovered from the head were consistent in weight with, but determined not to be
from, a .22 caliber bullet. The two other fragments, recovered from the chest and
hip, were also consistent with .22 caliber bullets and were excluded as being .380
caliber bullets. No bullet fragments recovered from the body were linked to a
specific gun, and no gunshot residue was found on appellant's hands. 

 During the State's opening argument, the prosecutor referred to a statement
appellant gave to police in which he stated that Guzman killed himself and denied
both admitting to Blanca that he killed Guzman and his story about a break-in at
Guzman's apartment. As appellant's counsel emphasized in his closing argument,
however, the State did not introduce this statement at trial. 

Ineffective Assistance of Counsel


 Appellant's first point of error challenges the effectiveness of his trial
counsel. Appellant contends that he was denied effective assistance of counsel
because his trial counsel did not request a limiting instruction to testimony by
Detective Palacios. The State called appellant's sister Blanca to testify. When
asked whether she had told Palacios that appellant admitting killing Guzman,
Blanca replied, "Not at any time, sir." Deputy Palacios repudiated Blanca's
statement during his testimony, when he referred to her conflicting statement when
he first interviewed her at Guzman's apartment on the night of the murder. 
Appellant does not dispute that Palacios's testimony was admissible hearsay, as an
inconsistent statement pursuant to rule 613(a), but argues that the testimony
warranted a limiting instruction during trial and an instruction in the jury charge,
that this portion of Deputy Palacios's testimony was to be considered solely for
purposes of impeachment and not as bearing on guilt or innocence. See Tex. R.
Evid. 105(a), 613(a). Because appellant's counsel did not request that instruction,
appellant argues that counsel was ineffective.

 To prevail on a claim of ineffective assistance of counsel, appellant must
meet the standard set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.
Ct. 2052, 2064 (1984). First, he must demonstrate that his counsel's representation
fell below an objective standard of reasonableness under prevailing professional
norms. See id. at 687-88, 104 S. Ct. at 2064-65; Mitchell v. State, 68 S.W.3d 640,
642 (Tex. Crim. App. 2002); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim.
App. 1999). Second, the appellant must establish that his counsel's performance
was so deficient that it prejudiced his defense. Howland v. State, 966 S.W.2d 98,
104 (Tex. App.--Houston [1st Dist.] 1998), aff'd on other grounds, 990 S.W.2d
274 (Tex. Crim. App. 1999). Thus, the appellant must show a reasonable
probability that, but for his counsel's unprofessional errors, the result of the
proceeding would have been different. Strickland, 466 U.S. at 694, 104 S. Ct. at
2068; Howland, 966 S.W.2d at 104. The appellant has the burden to establish both
of these prongs by a preponderance of the evidence. Jackson v. State, 973 S.W.2d
954, 956 (Tex. Crim. App. 1998). Because there is a strong presumption that trial
counsel's conduct fell within the wide range of reasonable professional assistance,
appellant must overcome the presumption that counsel's action or inaction might
be considered "sound trial strategy" under the circumstances. Strickland, 466 U.S.
at 689, 104 S. Ct. at 2065; Gamble v. State, 916 S.W.2d 92, 93 (Tex.
App.--Houston [1st Dist.] 1996, no pet.). Any allegation of ineffectiveness must
be firmly founded in the record, which must demonstrate affirmatively the alleged
ineffectiveness, Thompson, 9 S.W.3d at 813, but the record in a direct appeal, as
here, is rarely sufficient to overcome the presumption that trial counsel provided
reasonably effective representation or to permit us to evaluate fairly the claim of
ineffectiveness. See Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). 
We will not speculate to find trial counsel ineffective when the record is silent on
counsel's reasoning or strategy. Gamble, 916 S.W.2d at 93. 

 No motion for new trial was filed in this case, and there is nothing in the
record that explains counsel's reason for failing to object or request a limiting
instruction to the jury's consideration of Detective Palacios's testimony, in which
he contradicted the earlier testimony by Blanca in which she denied telling
Palacios that appellant admitted killing Guzman. Given the lack of any
explanation demonstrated by the record, appellant has failed to rebut the
presumption that counsel acted reasonably. See Thompson, 9 S.W.3d at 814. As
well-settled law demonstrates, moreover, the decision not to object can sometimes
be justified as part of a sound trial strategy aimed at avoiding drawing the jury's
attention to adverse testimony. See Darby v. State, 922 S.W.2d 614, 623-24 (Tex.
App.--Fort Worth 1996, pet. ref'd). 

 Appellant acknowledges that the record does not disclose his trial counsel's
strategy. He contends, however, that no reasonable attorney would have decided
against objecting and requesting a limiting instruction and an instruction in the jury
charge to ensure that the jury not consider the testimony in which Deputy Palacios
disputed Blanca's testimony except to impeach Blanca's testimony that she told
him that appellant admitted killing Guzman. 

 Appellant contends that the circumstances presented here are similar to those
in Ramirez v. State, 987 S.W.2d 938, 944-46 (Tex. App.--Austin 1999, no pet.)
(Ramirez I) and Ramirez v. State, 873 S.W.2d 757, 762-63 (Tex. App.--El Paso
1994, pet. ref'd) (Ramirez II). Ramirez I held that no plausible trial strategy could
have supported decisions by trial counsel not to object to a prior inconsistent
statement by a witness, 987 S.W.2d 938 at 945, and Ramirez II reached the same
conclusion concerning trial counsel's failures to object sufficiently, obtain a
limiting instruction, or object to final argument references regarding the
defendant's remote murder conviction. 873 S.W.2d at 763. 

 We distinguish both Ramirez cases, in which the unobjected-to evidence was
the only evidence of the defendant's guilt. See Ramirez I, 987 S.W.2d at 945;
Ramirez II, 873 S.W.2d at 763. This is not the case here, because other
circumstances tended to support appellant's guilt, specifically, appellant's flight
and his possession of Guzman's truck, wallet, and cash, and the .380 caliber pistol,
in addition to circumstances that tended to defeat appellant's claims that Guzman
had committed suicide and that a break-in had occurred at Guzman's apartment. 

 This case is properly categorized, therefore, as involving an isolated failure
to object to certain procedural mistakes or improper evidence, which generally
does not constitute ineffective assistance of counsel. Ingham v. State, 679 S.W.2d
503, 509 (Tex. Crim. App. 1984). Appellant has not demonstrated in this direct
appeal that his counsel's performance was deficient and has thus failed to satisfy
the first, threshold prong of the Strickland test. See Strickland, 466 U.S. at 688,
104 S. Ct. at 2064. Accordingly, we need not address his complaint under the
second prong of the Strickland test.

 We overrule appellant's first point of error. 

Factual Sufficiency Challenge


 Appellant's second point of error challenges the factual sufficiency of the
evidence to support his conviction. When conducting a factual-sufficiency review,
we view all of the evidence in a neutral light. Cain v. State, 958 S.W.2d 404, 408
(Tex. Crim. App. 1997). We will set the verdict aside only if (1) the evidence is so
weak that the verdict is clearly wrong and manifestly unjust, or (2) the verdict is
against the great weight and preponderance of the evidence. Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). Under the first prong of Johnson, we cannot
say that a conviction is "clearly wrong" or "manifestly unjust" simply because, on
the quantum of evidence admitted, we would have voted to acquit had we been on
the jury. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under
the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury's resolution of that
conflict. Id. Before finding that the evidence is factually insufficient to support a
verdict under the second prong of Johnson, we must be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury's verdict. Id. In conducting a factual-sufficiency
review, we must also discuss the evidence that, according to the appellant, most
undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App.
2003). The fact-finder alone determines what weight to place on conflicting
testimony because that determination depends on the fact-finder's evaluation of
witnesses' credibility and demeanor. Cain, 958 S.W.2d at 408-09. As the sole
determiner of the credibility of the witnesses, the fact-finder may choose to believe
all, some, or none of the testimony presented. Id. at 407 n.5.

 Appellant's factual-sufficiency challenge focuses on the lack of
eyewitnesses, the incriminating statement by his sister Blanca, as provided by
Deputy Palacios, and the State's failure to introduce the lengthy statement by
appellant to Deputy Palacios on the night he was arrested, in which he referred to
the several explanations for Guzman's death, but denied telling Blanca that he had
killed Guzman. Appellant also disputes the probative value of taking Guzman's
truck and fleeing to El Campo, on the grounds that his acknowledged emotional
reaction to his friend's death, and the death wish he exhibited to Blanca, provide an
equally plausible explanation for that behavior. Finally, appellant disputes the
forensic evidence at trial, on the grounds that Guzman's autopsy did not reveal
injuries consistent with a .380 pistol, and contends that no evidence showed that
appellant had any motive to kill Guzman.

 Despite the lack of eyewitnesses, and the testimony by Deputy Palacios
referring to Blanca's statement that appellant admitted to her that he had killed
Guzman, there was ample circumstantial evidence from which the jury could have
found that appellant murdered Guzman. The jury may well have interpreted
consciousness of guilt from appellant's flight, his possession of Guzman's truck to
make that flight, and his unexplained possession of Guzman's wallet and cash,
particularly after agreeing to meet Officer Hernandez near Blanca's apartment. In
addition, appellant had a .380 caliber pistol in his possession when he was arrested. 
Though appellant disputes the bullet-residue evidence from Guzman's autopsy as
failing to link a .380 caliber pistol to Guzman's wounds, other forensic evidence
from Guzman's apartment showed that Guzman had sustained a fatal wound from
a .380 caliber bullet that had been shot through Guzman's skull, and was thus not
revealed in the autopsy report, but had lodged in the wall behind Guzman, after
spattering the blood and hair found nearby on the wall. 

 Though gunpowder residue was found on Guzman's hands, this did not
compel a conclusion of suicide for the medical examiner and was equally
consistent with residue from so many shots that had been fired having settled on
Guzman's hands. Moreover, other forensic evidence weighed heavily against any
claim of suicide. The medical examiner explained that he had never known or
heard of a suicide attempted by a pistol shot to the groin, and police found neither a
weapon that might have been used at the scene nor a suicide note. Similarly, there
were no signs of a forced entry that suggested the claimed break-in. And though
appellant defends his many versions of how Guzman died as evidence of his
confused, emotional state, the jury was entitled to infer consciousness of guilt from
those explanations, as well as his statements to Blanca that he wished to die
himself. See Johnson v. State, 208 S.W.3d 478, 500 (Tex. App.--Austin 2006, pet.
ref'd). 

 Lastly, though appellant disputes that he had any motive to murder Guzman, 
the State had no burden to establish a motive; well-settled law has rejected motive
as an essential element of a criminal offense. See Rodriguez v. State, 486 S.W.2d
355, 358 (Tex. Crim. App. 1972). Moreover, appellant's possession of Guzman's
truck, wallet, identification, and cash, as well as his expressed intent to flee to
Mexico and meet his girlfriend there, impugns his claim of lack of motive. 

 Having examined the record and considered the evidence in the requisite
neutral light, we cannot say that the jury's finding appellant guilty was so contrary
to the overwhelming weight of the evidence as to be manifestly wrong and unjust. 
See Watson, 204 S.W.3d at 414-15.

 We overrule appellant's second point of error.

Conclusion


 We affirm the judgment of the trial court.





 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. Tex. R. App. P. 47.2(b).


1. The record does not reflect any objection or request by appellant's trial counsel for
a limiting instruction or jury-charge instruction that this testimony by Detective
Palacios should be considered only for purposes of impeachment of Blanca Alonzo. 
2. Deputy Palacios's work on the night of the murder included travel to El Campo after
appellant was arrested there, to interview appellant.